## HURST, ANTHONY & WATKINS, Inc., v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania.
February 9, 1928.

No. 3315.

1. **Internal revenue �ö⇒7(31), 9(27)—Insurance agency corporation, having authorized capital of $25,000, was "corporation having not more than nominal capital," for taxation purposes, where income-producing agency was personal service of shareholders (Revenue Act of 1917, § 209 [Comp. St. § 6336⅜j]).**

Where authorized capital stock of insurance agency corporation was $25,000, and such capital was not primarily income-producing factor in any way, but was convenient for purpose of buying office furniture, books, and possibly advancing insurance premiums for clients, the real income-producing agency being personal service of shareholders, such corporation should be classified as "corporation having not more than nominal capital," under Revenue Act 1917, § 209 (Comp. St. § 6336⅜j), relating to income and profits taxes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

2. **Internal revenue ⊖⇒7(31)—Insurance agency corporation, whose stockholders were employed in performing personal services, was "personal service corporation," within income tax law (Revenue Act 1918, § 200 [Comp. St. § 6336⅛a]).**

Insurance agency corporation *held* to be "personal service corporation," within meaning of Revenue Act 1918, § 200 (Comp. St. § 6336⅛a), where capital was not necessarily an income-producing factor, but was more of convenience for purpose of providing necessary equipment, advances of salaries, and possibly for purpose of advances of insurance premiums for clients, and all of stockholders were employed in performing personal services.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Personal Service.]

3. **Internal revenue ⊖⇒38(12)—Corporation must establish classification for income and profits tax purposes only by fair weight of testimony.**

Although burden is on taxpayer enjoying corporate form of organization to show in which class the corporation is to be placed for income and profits tax purposes, corporation must establish fact only by fair weight of testimony.

At Law. Action by Hurst, Anthony & Watkins, Inc., against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for plaintiff in accordance with opinion.

Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

J. D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa., and C. M. Charest, Jno. A. McCann, and Jno. H. Pigg, of the Bureau of Internal Revenue, all of Washington, D. C., for defendant.

SCHOONMAKER, District Judge. This is an action to recover income and profits taxes alleged to have been illegally collected for the calendar years 1917 and 1918. A jury trial was waived, and the case tried before the court without a jury.

The question involved is whether or not the plaintiff is properly classed as to the year 1917 under section 209 of the Revenue Act of 1917 (Comp. St. § 6336⅜j), as a corporation "having no invested capital or not more than a nominal capital," and as in the year 1918 whether or not under section 200 of the Revenue Act of 1918 (Comp. St. § 6336⅛a), the plaintiff is properly classed as a "personal service corporation."

From the pleadings and the proofs, we make the following findings of fact:

### Findings of Fact.

The plaintiff was, during the years 1917 and 1918, a Pennsylvania corporation, of Pittsburgh, Pa., engaged in the general insurance business. The incorporators and shareholders were Oliver C. Hurst, Walter L. Anthony, and Lloyd C. Watkins, each of whom had had a large experience as an insurance agent. During the years 1917 and 1918, these three incorporators and stockholders owned all the capital stock of the company and were regularly and actively engaged in the conduct of plaintiff's insurance business.

The authorized capital of the corporation was $25,000, $22,500 being immediately issued to the incorporators, each receiving $7,500. For this, each incorporator paid in cash $1,875 and turned over his respective insurance business, the three businesses thus turned over being valued at $5,625 each. The $5,625 of the capital stock so received by each of the incorporators was then turned back to the plaintiff as a gift, and the incorporators resubscribed for a like amount of the capital stock; such resubscribed stock being paid for in cash by the subscribers

under an arrangement whereby the plaintiff should retain a certain percentage of the commissions on business obtained by the incorporators. A total of $8,500 had actually been paid to the plaintiff on account of this subscription to its capital stock by the 1st of January, 1917, and $13,100 had been paid as of the date of December 31, 1917. On January 1, 1918, the agreement among the incorporators was changed, whereby the entire authorized capital stock of $25,000 was issued, each of them receiving the amount of stock representing the difference between the amount he had already paid for and $8,333.-33, and notes were given to the plaintiff for the unpaid part of the subscription, which notes were to be paid by the application of commissions, as above indicated. As of December 31, 1918, there had been paid between $19,000 and $20,000 for its capital stock, and it held the notes of the stockholders for the difference between that amount and the total stock issued, about $25,000.

The plaintiff, during the years in question, represented a number of insurance companies, including fire, automobile, casualty, and plate glass. It collected insurance premiums for the insurance companies for which it acted as agent, and paid these premiums to the various companies, less its own commissions. Some of the customers of the plaintiff paid the insurance premiums at the times the policies were issued, some paid prior to the time plaintiff remitted to the insurance companies, and others were delinquent in their payments; the plaintiff frequently paying premiums to the insurance companies in behalf of delinquent customers. During the year 1917 the plaintiff had 5 nonstockholder employees. There were a number of such employees during the year 1918, but the record does not show the exact number. In addition, the plaintiff had from 25 to 35 subagents, who placed insurance business through the plaintiff's agency, receiving the full local agent's commission thereon. The plaintiff also received a commission on such business.

The plaintiff's gross income for the year 1917 was $20,405.56. Its total income for the year 1918 was $31,381.82. Its net income for the year 1917 was $5,629.35, and for the year 1918, $5,931.54. Of the total income received, $220.48 represented interest on daily bank balances during the year 1917, and $813.41 represented interest on daily bank balances for the year 1918. Salaries paid to stockholders during the year 1917 amounted to $3,600, and during the year 1918, $12,012.72. Nonstockholder employees during the year 1917 were paid $4,797.25,

and during the year 1918, $7,825.23. The plaintiff filed income and profits tax returns for the years 1917 and 1918, in which, as to the year 1917, claim was made for classification under section 209 of the Revenue Act of 1917, as a corporation "having no invested capital or not more than a nominal capital," and as to the year 1918 claim was made for classification under section 200 of the Revenue Act of 1918, as a "personal service corporation."

The Commissioner of Internal Revenue denied this classification, and determined the tax liability on the basis of a corporation having and operating with invested capital, as a result of which the Commissioner assessed against the plaintiff for additional taxes for the year 1917, $431.92, and for the year 1918, $987.62. These taxes were duly paid by the plaintiff under protest, and claims for refundment therefor were duly filed by the plaintiff. These claims were rejected in full by the Commissioner. Whereupon the plaintiff brought this suit.

### Conclusions of Law.

[1, 2] Under this state of facts, we conclude that the plaintiff, so far as concerns the income tax for the year 1917, comes properly under the classification of section 209 of the Revenue Act of 1917, as a corporation having not more than a nominal capital, and that, so far as concerns the income tax for the year 1918, it is properly classed under section 200 of the Revenue Act of 1918, as a "personal service corporation," and that the plaintiff is entitled to recover the amount of these additional taxes paid for these two years, with interest thereon.

### Discussion.

[3] There was considerable discussion, first, as to where the burden of proof rested, the defendant contending that the assessment by the Commissioner was prima facie evidence of the plaintiff's liability for the tax, and that the burden rested upon the plaintiff to overcome this prima facie case by evidence satisfying beyond a reasonable doubt. It really is of little importance, because, from the facts proved, we are satisfied beyond a reasonable doubt that the plaintiff is within the classification. We would say, however, that, though we believe the burden is upon the taxpayer, enjoying a corporate form of organization, to show in which class the corporation is to be placed, we do not believe that properly there is any greater burden of proof resting on the corporation in such case

than to establish that fact by a fair weight of testimony.

Now, in the instant case, the very nominal capital of this corporation was not a primarily income-producing factor in any way. The real income-producing agency of the plaintiff corporation was the personal service of the shareholders. The business of an insurance agent, whether life, fire, or accident, is essentially a personal service. It does not require any particular capital to carry on a business of that sort, and invested capital in such a case is not an income-producing factor. The capital is convenient for the purpose of buying office furniture, books, and possibly advancing insurance premiums for their clients to the companies holding insurance risks, but in no sense is it a material income-producing factor.

It has been held by the federal courts that invested capital was not a material income-producing factor, if it was used solely as a fund from which to advance salaries, wages, etc., and to provide office furniture, accommodations, etc. Iredell v. De Laski (C. C. A.) 290 F. 955; Hubbard-Ragsdale v. Dean (D. C.) 15 F.(2d) 410; Mountain View Sanatarium v. U. S. (District Court, Oregon) 25 F.(2d) 1016; Fuller & Smith v. Routzahn (District Court, Eastern Division of Northern District of Ohio) 23 F.(2d) 959.

Now, as to the year 1918, there can be no question that the plaintiff was primarily engaged in performing personal service. All of its stockholders were so employed, and the capital of the company was not necessarily an income-producing factor. As we have just stated, the capital was rather more of a convenience, for the purpose of providing the corporation with necessary equipment, advances of salaries, and possibly for the purpose of advancing insurance premiums for clients. In the recent case of Fuller & Smith v. Routzahn, supra, Judge Westenhaver, of the Northern District of Ohio, classed a corporation conducting a general advertising agency as a personal service corporation, because the plaintiff was primarily engaged in performing personal service. That applies very aptly to the present case. We do not know of any business where the personal service equation is more important than in the business of an insurance agent. Here the plaintiff meets all the requirements of the Revenue Act of 1918 (40 Stat. 1057), namely: (1) It is engaged in rendering personal service, as distinguished from trading, merchandise, and manufacturing. (2) The principal stockholders were regularly engaged in the conduct of its affairs during the tax years in question. (3) Its capital stock was not a material income-producing factor. (4) Its income sought to be taxed in this case must be ascribed primarily to the activities of its principal stockholders.

We therefore must conclude that the plaintiff is clearly within the provisions of section 209 of the Revenue Act of 1917, and section 200 of the Revenue Act of 1918, and that the plaintiff is entitled to recover the additional taxes paid in. Let an order for judgment be submitted accordingly.