### W. A. GORDON & CO., Limited, v. LINES, Collector of Internal Revenue.

District Court, E. D. Louisiana. April 25, 1928.

No. 18518.

Internal revenue ⊙—9(27)—Merchandise brokerage corporation, deriving income primarily from commissions on sales, held taxable as personal service corporation having only nominal "capital" (Revenue Act 1917, § 209 Comp. St. § 6336⅜j]; and Regulation 41, Internal Revenue Regulation, art. 74).

Corporation having $10,000 capital stock, engaged in merchandise brokerage and manufacturers' agency business doing annual business of over $2,150,000, of which only $22,292 was on its own account and was merely incidental, occasional buying to fill in "pool car shipments" for benefit of lower freight rates on carload lots in interest of customers, its income being primarily from personal activities of its three stockholders as commissions on sales, held, taxable under Revenue Act 1917, § 209 (Comp. St. § 6336⅜j), and Regulation 41, and Internal Revenue Regulation, art. 74, as using only nominal capital; "capital" meaning all capital invested, plus surplus accounts or undivided profits left in business for purpose of accumulating and of being used as capital.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

At Law. Action by W. A. Gordon & Co., Limited, against Dr. D. Arthur Lines, Collector of Internal Revenue for the District of Louisiana. Judgment for plaintiff.

William A. Shaw and G. P. Eberle, both of New Orleans, La., for plaintiff.

Ralph S. Scott, Sp. Asst. to Bureau of Internal Revenue, of Washington, D. C., and T. M. Logan Bruns, Asst. U. S. Atty., of New Orleans, La., for defendant.

BURNS, District Judge. Petitioner, a corporation, prays judgment against the collector of internal revenue for the district of Louisiana in the sum of $5,556.29, with interest and costs, alleging the unlawful collection of that amount for the year 1917 by threat of a warrant of distraint, over its protest, and its failure to obtain a refund after exhausting its statutory remedies. Issue being joined on the legality of the tax, the case came on for trial, when a jury was waived by written stipulation. In lieu of a verdict, findings of fact are requested on both sides, pursuant to which I find as follows:

That the plaintiff, as a Louisiana corporation, commenced business, as the successor of its component stockholders, with its only place of business in the city of New Orleans on January 15, 1913.

That the general nature of its business was a merchandise brokerage and manufacturers' agency.

That the freight charges due from buyers of merchandise, in proportion to their respective interests in pooled cars, was collected by plaintiff at the same time the price of merchandise was collected.

That on a number of occasions during the year 1917 it became convenient for the plaintiff to buy what are called pool car fill-ins, and that these represented a total of $22,292.00, on which a gross profit of $8,435.79 was made, and, deducting from this gross profit its proportionate part of the total expense of 10.37 per cent., the net profit on said pool car fill-ins or trading transactions was $3,809.83.

That the corporation carried no stock on its own account, except such pool car fill-ins as were not disposed of while in transit.

That the corporation acted for a number of seasonable packers, but all such stock as was not disposed of prior to shipment was shipped on consignment; the corporation itself not financing the packers or the manufacturers for whom they acted and represented.

That of all the pool car shipments there were but 12 in which the total collections from the buyers did not equal the total draft of the shipper, and between each of these shipments there were intervals as follows: January 3d—January 16th, January 30th—April 12th, May 15th—August 10th, September 21st—October 13th, October 16th—November 2d, December 3d—December 11th; that in the transaction of October 16th, which was only an interval of three days from the previ-

ous transaction, the uncollected portion of this pool car amounted only to $34.68, and taking the total of these 12 pool car drafts, amounting to $90,351.82, and the total collections made prior to lifting of drafts throughout the year, which were $34,184.31, or a total difference of $56,167.51, which, divided by the number of shipments (12), in which there was ample time in each instance, except that of October 16th, which involved but $34.68, there would be an average advance of $4,680.62, which amount the current brokerage and commissions accrued to the corporation and paid throughout and during the year were amply sufficient to cover this temporary average advance without the use of other capital.

That the net profits of the corporation for the year 1917, following the custom of the previous years, were divided and credited as a dividend to the three stockholders as of December 31st, and withdrawn by these stockholders, so that no surplus capital account was ever carried. Fred N. Miller, president and owner of 96 per cent. of the stock, received as his share of profits for the year 1917 the sum of $37,123.91.

That Fred N. Miller withdrew the profits for the year 1916, the sum of $17,700.09, during the year 1917.

That the stockholders' dividend funds or shares of profits were not left in the corporation to be used, nor was it used as capital.

I further find, specially and contrary to the request of defendant:

That the plaintiff corporation was not engaged in a general mercantile business; but, on the contrary, that the trading in merchandise done for its own account was, proportionately to its brokerage and manufacturers' agency business, and comparatively, by volume of business, merely nominal and incidental.

That the total sales for the year was more than $2,150,000. The brokerage and commission on these was $74,767.74. The purchase of pool car fill-ins was $22,292, the profit on which was $8,435.79. The gross profit from both brokerage and direct trading was $83,203.53. The total expense was $44,532.79, which, deducted, left a net profit of $38,670.74. The gross profit from direct trading (pool car fill-ins) was therefore 10.39 per cent. of the total gross profit. By charging 10.39 per cent. of $44,532.79 as the proportionate expense of direct trading transactions, the net profit from direct trading was $3,809.83. This net profit on direct trading on a turnover of sales in excess of $2,150,000 was a percentage of less than one quarter of 1 per cent.

That the three members or stockholders of the corporation were engaged in rendering personal service as brokers and agents, as distinguished from trading or manufacturing or buying and selling in the open market, except only the incidental, occasional buying to fill in pool car shipments for the benefit of lower freight rates on carload lots in the interest of their customers.

That its capital stock ($10,000) was not a material income-producing factor in the business, which had an ultimate turnover for the year of more than $2,150,000. The income was earned primarily from the personal activities of its stockholders, as commissions on sales.

Accordingly it seems clear to me that the corporation's tax liability was entitled to classification under section 209 of the Revenue Act of 1917 (Comp. St. § 6336⅜j) and Regulation 41, because its capital, within the meaning of this act, and as defined by article 74 of Internal Revenue Regulations, was nominal; i. e., was small, negligible, and merely incidental. This conclusion does not contemplate merely the capital or treasury stock paid in, but comprehends the broader term "capital" described in Porter v. Lederer (D. C.) 267 F. 739, viz., all capital invested, plus all surplus accounts, or undivided profits left in the business for the purpose of accumulating and of being used as capital.

The contentions of the defendant to the contrary cannot be sustained. They are predicated upon forced constructions deduced by its counsel, whose arguments erroneously assume that the profits of previous years were divided as dividends, credited to the stockholders, unwithdrawn, and used as capital during the succeeding year. Similar arguments advanced with respect to the character and comparative importance of the pool car fill-in transactions, the financing of same, as well as the relation of these to the main business, are equally fallacious and without justification. The brief filed for defendant industriously assembles numerous court decisions in which analogous situations are presented. Among others cited by defendant is that of the Eighth Circuit Court of Appeals, dated March 30, 1928, entitled Dreyer Commission Co., Inc., v. Arnold J. Hellmich, Collector of Internal Revenue, 25 F.(2d) 408.

Contrast of the facts found there with the facts in this case fortifies confidence in my conclusions. Other of the decisions cited variously define the phrases "nominal capital," and "personal service corporations."

These generally agree upon the tests by which a corporation may be included in or excluded from the latter classification. A reading of such carefully considered opinions as those by Judge Hickenlooper in Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410, affirmed in (C. C. A.) 15 F.(2d) 1013, by Judge Cant in Matteson Co. v. Willcuts (D. C.) 12 F.(2d) 447, and that in Thomas E. Basham Co. v. Lucas (D. C.) 21 F.(2d) 550, convince me that the plaintiff here has sustained the burden of proof, has shown that its capital in actual use was not a material income producing factor; that it required but a nominal capital to sustain its overhead, office and sales expenses; that the volume of its primary business as broker and manufacturers' agent and the accumulating commissions accruing during the year produced abundant fluid assets by which the comparatively casual, incidental and inconsequential pool car fill-in transactions were readily carried for the occasional brief periods in which advances were necessary; that the declared and credited profits of the stockholders, which were only temporarily not withdrawn, were not used and did not serve as a function in carrying on the business; that it did not constitute an integral part of the transactions out of which income was derived; that it was not availed of as capital while undrawn; that its income was primarily due to and resulted from the personal activities of the owners; and that these were regularly engaged personally in conducting the business.

A judgment may accordingly be entered in favor of plaintiff, with interest and costs.