## ATLANTIC COAST DISTRIBUTORS v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2815.

734

J. B. Grice (W. L. Harrison, of St. Louis, Mo., on brief), for petitioner.

John H. McEvers, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

NORTHCOTT, Circuit Judge. This is an appeal involving taxes for the fiscal year ending June 30, 1920, in the sum of $9,256.-40, and is taken from an order of redetermination entered by the United States Board of Tax Appeals, promulgated on the 22d day of December, 1927. The case is brought to this court by petition for review, pursuant to the provisions of the Revenue Act of 1926 (Act of February 26, 1926) c. 27, §§ 1001, 1002, and 1003, 44 Stat. 9, 109, 110 (26 US CA §§ 1224–1226).

The sole question presented is whether the petitioner corporation was, for the fiscal year ending June 30, 1920, entitled to classification as a personal service corporation within the purview of section 200 of the Revenue Act of 1918.

The Revenue Act of 1918, c. 18, 40 Stat. 1057, 1058, 1070, provides:

"Sec. 200. That when used in this title—

      *    *    *    *    *    *

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the

principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

\* \* \* \* \* \*

"Sec. 218. (a) \* \* \*

\* \* \* \* \* \*

"(e) Personal service corporations shall not be subject to taxation under this title, but the individual stockholders thereof shall be taxed in the same manner as the members of partnerships. All the provisions of this title relating to partnerships and the members thereof shall so far as practicable apply to personal service corporations and the stockholders thereof: Provided, That for the purpose of this subdivision amounts distributed by a personal service corporation during its taxable year shall be accounted for by the distributees; and any portion of the net income remaining undistributed at the close of its taxable year shall be accounted for by the stockholders of such corporation at the close of its taxable year in proportion to their respective shares."

Regulations 45, Treasury Department (1920 Ed.), relating to the income tax and war profits and excess profits tax under the Revenue Act of 1918, provide:

"Art. 1525. *Personal Services Rendered by Personal Service Corporation.*—In order that a corporation may be deemed to be a personal service corporation its earnings must be derived principally from compensation for personal services rendered by the corporation to the persons with whom it does business. Merchandising or trading either directly or indirectly in commodities or the services of others is not rendering personal service. Conducting an auction, agency, brokerage, or commission business strictly on the basis of a fee or commission is rendering personal service. If, however, the corporation assumes any such risks as those of market fluctuation, bad debts, failure to accept shipments, etc., or if it guarantees the accounts of the purchaser or is in any way responsible to the seller for the payment of the purchase price, the transaction is one of merchandising or trading, and

this is true even though the goods are shipped directly from the producer to the consumer and are never actually in the possession of the corporation. The fact that earnings of the corporation are termed commissions or fees is not controlling. The fact that a commission or fee is based on a difference in the prices at which the seller sells and the buyer buys raises a presumption that the transaction is one of merchandising or trading, and it will be so considered in the absence of satisfactory evidence to the contrary.

"Art. 1526. *Personal Services Rendered by Personal Service Corporation; More than One Business.*—It frequently happens that corporations are engaged in two or more professions or businesses which are more or less related, one of which does not consist of rendering personal service. Thus an engineering concern may also engage in contracting, which amounts to trading in materials and labor, a brokerage concern may guarantee some of its accounts, a photographer may sell pictures, frames, art goods, and supplies, or a dealer in a commodity may furnish expert advice or services with respect to its installation, use, etc. In such case the corporation is not a personal service corporation unless the nonpersonal service element is negligible or merely incidental and no appreciable part of its earnings are to be ascribed to such sources. See also section 303 of the statute and articles 741–743.

\* \* \* \* \* \*

"Art. 1528. *Activities of Stockholders of Personal Service Corporation; Conduct of Affairs.*—Where the principal owners or stockholders do not render the principal part of the services, but merely supervise or direct a force of employees, the corporation is not a personal service corporation. If employees contribute substantially to the services rendered by a corporation, it is not a personal service corporation unless in every case in which services are so rendered the value of and the compensation charged for such services are to be attributed primarily to the experience or skill of the principal owners or stockholders and such fact is evidenced in some definite manner in the normal course of the profession or business. The fact that the principal owners or stockholders give personal attention or render valuable services to the corporation as a result of which its earnings are greater than those of a corporation engaged in a like or similar business, the principal owners or stockholders of which do not devote personal attention to the management or supervision of its af-

fairs, does not of itself constitute a personal service corporation.

\* \* \* \* \* \*

"Art. 1532. *Capital of Personal Service Corporation; Inference from Use.*—The term 'capital' as used in section 200 of the statute and in article 1523–1532 means not only capital actually invested by the owners or stockholders, but also capital secured in other ways. Thus if capital is borrowed either directly as shown by bonds, debentures, certificates of indebtedness, notes, bills payable, or other paper, or indirectly as shown by accounts payable or other forms of credit, or if the business of the corporation is in any way financed by or through any of the owners or stockholders, these facts will be deemed evidence that the use of capital is necessary. If a substantial amount of capital is used to finance or carry the accounts of clients or customers, it will be inferred that because of competition or other reasons such practice is necessary in order to secure or hold business which otherwise would be lost, and that the corporation is not a personal service corporation. If a corporation engaged in an agency, brokerage or commission business regularly employs a substantial amount of capital to lend to principals, to buy and carry goods on its own account, or to buy and carry odd lots in order that it may render more satisfactory service to its principals or customers, it is not a personal service corporation. In general the larger the amount of the capital actually used the stronger is the evidence that capital is necessary and is a material income-producing factor and that the corporation is not a personal service corporation."

The facts as found by the Board of Tax Appeals are as follows:

The petitioner is a corporation organized under the laws of the state of South Carolina, with its principal office at Charleston, in that state, where it is engaged in the produce and fruit commission business. It was organized in 1915, with an authorized capital stock of $10,000, all of which was fully paid and outstanding during the fiscal year ending June 30, 1920. The stock in the petitioner was owned in equal amounts by W. H. Mixson and J. S. Mixson. W. H. Mixson was the president. While he was thoroughly conversant with the petitioner's business, he was not continuously employed or engaged in the business and drew no salary during the taxable year in 1920. He was actively engaged in business other than that of the petitioner, and was president of the Southern Fruit Company and the W. H.

Mixson Seed Company, and received from each of said companies a substantial salary. J. S. Mixson was vice president, treasurer, and general manager of the business of the petitioner. He devoted his entire time to the business during the year in question, and received a salary of $2,500. The only other officer of the petitioner was the secretary, G. E. Blanken, who owned no stock. He devoted his entire time to the business, and received compensation in the amount of $3,796.98. He acted as inspector of produce, shipping clerk, and at various times traveled on behalf of the petitioner.

The balance sheets showing the assets and liabilities of the petitioner at the beginning and end of the fiscal year ending June 30, 1920, are as follows:

|  | July 1, 1919 | June 30, 1920 |
| --- | --- | --- |
| **Assets** | | |
| Cash | $ 8,800.34 | $ 5,645.15 |
| Accounts receivable | 2,772.61 | 4,798.40 |
| Liberty bonds | 1,000.00 | 1,000.00 |
| Fixtures | 108.00 | 1,172.30 |
| | $12,680.95 | $12,615.85 |
| **Liabilities** | | |
| Accounts payable | $ 928.00 | $ 1,460.00 |
| Dividends payable | 1,000.00 | .00 |
| Capital stock | 10,000.00 | 10,000.00 |
| Surplus | 752.95 | 1,155.85 |
| | $12,680.95 | $12,615.85 |

The petitioner's income and deductions for the fiscal year ending June 30, 1920, are as follows:

### Income

| | | |
| --- | --- | --- |
| Commissions on sale of vegetables | | $37,668.71 |
| Commissions on sale of containers | | 3,310.49 |
| Total commission | | 40,979.20 |
| Sale of apples | $139,359.14 | |
| Cost of apples | 132,376.91 | |
| | $6,982.23 | |
| Sale of seed potatoes | 42,326.83 | |
| Cost of potatoes | 38,878.80 | |
| | 3,448.03 | |
| Total trading profit | | 10,430.26 |
| Gross income | | $51,409.46 |

### Deductions

| | | |
| --- | --- | --- |
| Salary nonstockholders | $6,426.63 | |
| Salary stockholders | 2,504.25 | |
| Brokerage paid | 769.15 | |
| Discount and interest | 361.15 | |
| Telephone and telegram | 3,197.20 | |
| Traveling expense | 1,633.13 | |
| Railroad claims paid | 147.83 | |
| Exchange | 1,163.37 | |
| Other deductions | 2,176.24 | |
| | | 18,378.85 |
| Net income | | $33,030.61 |
| Less Liberty bond interest | | 42.50 |
| Net taxable income | | $32,988.11 |

In addition to the produce commission business, the petitioner, as a principal,

bought and sold potatoes during the taxable year, accepting notes from some of its customers in payment of the potatoes sold, in the amount of $13,535.39. The gross profit realized from the sale of potatoes was $3,448.03. The petitioner, as a principal bought and l realized a gross profit of gross profit from trading as d potatoes and apples during r amounted to $10,430.26, or of the total gross income for

nd selling produce on a commdrafts were used when the hipped to Northern markets. :change and interest on these d to $1,163.37 during the year

ier supplied its customers with of packing cases in order that ight be uniformly marketed. :e taken from the farmers and ne manufacturer to be filled. :e made direct to the farmers. made by the manufacturer titioner, and petitioner in turn ners, plus a 10 per cent. commments were never made by the til after collection had been e farmers. The only instance the business was borne by the

nts receivable June 30, 1920, $4,798.40, consisted of $2,618.commission houses, $300.18 due iims, $806.15 due from farmers old to them, and $1,073.09 admers for goods not settled for. lly when farmers were in need e petitioner advanced funds to s turned over for shipment. The ployed brokers, in some instancn the marketing of goods. tal used in the business during a question consisted of $10,000 paid in ... stock, a total of $15,000 borrowed from and repaid to the bank, and credit extended it by the bank by furnishing funds to pay drafts drawn on petitioner pending payment on drafts drawn by petitioner and deposited with the bank for collection.

The respondent has denied the petitioner a classification as a personal service corporation and determined a deficiency in income and profits taxes in the amount of $9,256.40 for the fiscal year ending June 30, 1920.

The act specifies three essential elements that must concur to constitute a corporation one of personal service—(1) the principal owners or stockholders shall be regularly engaged in the active conduct of the affairs of the corporation; (2) its income must be ascribed primarily to their activities; and (3) capital (invested or borrowed) must not be a material income-producing factor.

This court has held that findings of primary facts made by the Board of Tax Appeals will not be reviewed when supported by testimony. Ox Fibre Brush Co. v. Blair, Commissioner (4th Circuit Court of Appeals) 32 F.(2d) 42, decided April 9, 1929.

An examination of the finding of facts by the Board shows that, as to the first essential, the finding is not at all responsive to the issue. The language of the statute is "regularly engaged in the active conduct of the affairs of the corporation." The finding of the Board is that W. H. Mixson, one of the two stockholders, was not "continuously employed or engaged in the business," while the evidence is uncontradicted that he gave several hours every day to the direction of the business, as president of the corporation, that he fixed prices, saw customers, generally exercised a supervisory control, and was at all times available for consultation as to any questions that arose. He was the active and actual head of the business. That this constituted being "regularly engaged in the active conduct of the affairs of the corporation" is evident. Fuller & Smith v. Routzahn (D. C.) 23 F.(2d) 959; Kaufman, Limited, v. Commissioner (C. C. A.) 24 F.(2d) 44; New Orleans Shipwright Co., Limited, v. Commissioner (C. C. A.) 27 F.(2d) 214.

It appears, not only from the evidence, but also from the finding of facts by the Board, that the income of the company must be ascribed primarily to the activities of the only two stockholders, W. H. Mixson and J. S. Mixson. Both were active in its management; J. S. Mixson devoting all his time to the work of the company. It is true that there were four employees in the office, one of whom occupied the position of shipping clerk and inspector, but he owned no stock in the company, and had no part in directing the policy of the business. The other employees were clerks and stenographers.

Where minority stockholders or employees received more salary and bonus than majority stockholders, but principal stockholders were active in conducting the business, the corporation was a personal service corporation for taxation purposes under the Revenue Act of 1918. Fuller & Smith v. Routzahn, supra. See, also, North American Ry. Construction Co. v. Commissioner (C. C. A.) 27 F.(2d) 493, 59 A. L. R. 1274;

Kaufman, Limited, v. Commissioner, supra; Hurst, Anthony & Watkins v. Heiner (D. C.) 26 F.(2d) 734; Appeal of Bryant & Stratton, 1 B. T. A. 32; Lee Live Stock Commission Co. v. Commissioner of Internal Revenue, 7 B. T. A. 532.

The capital, either invested or borrowed, of the company, certainly cannot be held to be "a material income-producing factor." The capital carried on the books was $10,000, with a surplus of less than $1,000, used for the current needs of the company. The telegraph and telephone bills, necessary for market reports in carrying on the commission business ran over $3,000 a year, and there was practically no income from invested capital. It is true that twice in the year in question small amounts of capital, five and ten thousand dollars, were borrowed for a short time, to handle shipments of potatoes and apples shipped to the company for delivery to its customers on orders already taken, but these uses of borrowed capital for only a few days on only two occasions in a year certainly cannot be held to be material in producing income. North American Ry. Construction Co. v. Commissioner, supra; W. A. Gordon & Co. v. Lines (D. C.) 25 F.(2d) 894; Fuller & Smith v. Routzahn, supra; New Orleans Southwright Co., Limited, v. Commissioner, supra; Posse-Nissen, etc., v. United States (D. C.) 25 F.(2d) 748; Mountain View Sanitarium Co. v. Huntley (D. C.) 25 F.(2d) 1016; Appeal of Bryant & Stratton, supra; Appeal of Massengale Adv. Agency, 2 B. T. A. 26; Lee Live Stock Com. Co. v. Commissioner of Internal Revenue, supra.

■ It is contended on behalf of the respondent that the fact that the company traded in apples and potatoes aside from its regular commission business, and that the gross profits from such outside trading amounted to $10,430.26 and constituted about 20 per cent. of its total gross income, deprived it, under Treasury Dept. Reg. 45, above set out, of a personal service classification. We do not think so. The trading in apples and potatoes was done chiefly with the customers in the commission business and chiefly for their convenience; was done at a season of the year when there was no commission business, and was evidently done for the purpose of holding the organization together and giving its employees work at a time when they would have had nothing to occupy them. While the gross profit from this outside business was about 20 per cent. of the company's gross income, it is uncontradicted in the evidence that the net profit on this outside business was only $1,238.33, and constituted less than 4 per cent. of the company's net profit for the year in question. It is evident that the outside trading was incidental to the main commission business.

The respondent relies on the cases of Martin, Inc., v. Edwards (D. C.) 293 F. 258, and St. Paul Abstract Co. v. Commissioner (decided by Circuit Court of Appeals, Eighth Circuit, March 25, 1929) 32 F.(2d) 225, to sustain its contention, but a careful study of these cases leads us to the conclusion that both cases strongly support petitioner's contentions.

■ The fact that no salary was paid the president of the company, W. H. Mixson, and only a nominal salary to J. S. Mixson, the vice president, treasurer, and general manager, when the business done and profits earned would have justified liberal salaries to both, is conclusive evidence of the good faith of the petitioner's two stockholders. They took their compensation for services in the form of dividends, for which they must have accounted in their income tax returns, when the allowance to themselves of such salaries as the business justified would have materially reduced the profit shown by the company.

■ While the burden is on the petitioner to prove right to a personal service classification (Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. ——, decided by Supreme Court, January 2, 1929), we think that the petitioner has sustained that burden, and that the Board of Tax Appeals was wrong in its application of the law to the admitted facts.

The decision is therefore reversed.