## PRODUCERS' PRODUCE CO. v. CROOKS, Collector of Internal Revenue.

### No. 8470.

District Court, W. D. Missouri, W. D. Nov. 23, 1932.

Mann, Mann & Miller, of Springfield, Mo., for plaintiff.

Wm. L. Vandeventer, U. S. Atty., and Thomas J. Layson, Asst. U. S. Atty., both of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is a suit to recover income taxes which, it is claimed, were unlawfully exacted.

A jury was waived in writing and the case was tried to the court sitting as a jury.

The taxes in controversy were those paid for the years 1925 and 1926. For the year 1925 the amount was $2,926.18 and the year 1926 $4,143.81.

The plaintiff was engaged, at all the times mentioned in the pleadings and evidence, in the co-operative marketing of poultry and eggs at Springfield, Mo. It was organized under the provisions of article 29, chapter 87 (Mo. St. Ann.), relating to the subjects of agriculture and co-operative companies.

According to the agreed statement of facts, and the other evidence, the plaintiff was at all times engaged in its appropriate business on behalf of its members and other producers; also that it had complied with the law which required it to turn back to the members and other producers the proceeds of the sales, less the necessary marketing expenses. Moreover, it did not appear that its function as a marketing agency had been exercised over produce of greater value belonging to nonmember producers than to member producers.

Organizations of this character were specifically exempted from the income tax, as it existed at the time under the provisions of section 982, title 26, United States Code (26 USCA § 982). Paragraph 12 of said section provides that "farmers' * * " or like associations organized and operated on a co-operative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses" shall be within the exemption.

It appeared from the evidence that the plaintiff in all respects came within the exemption provisions save only that a small percentage of its business consisted in the outright purchases of small quantities of

poultry and eggs from dealers and producers.

It will be observed that the exemption was extended to those co-operative organizations engaged in *marketing for producer members and other producers who were not members*. In limiting the exemption, it was provided that in marketing for producers who were not members, the amount in value marketed should not exceed the value of the products marketed for members.

The question for consideration is whether the purchase outright of a small percentage of said products from dealers or producers would deprive the plaintiff of the benefit of the exemption.

Other pertinent facts will be stated in the course of this memorandum opinion.

1. The outright purchases made in the year 1925 was 4.62 per cent. of all the products marketed for that year. For the year 1926 it was 8.23 per cent. The law did not contemplate that an exemption would be allowed except in those cases where the marketing was done on behalf of members who were producers and nonmember producers. It was not intended to give to an association the benefit of the exemption if engaged in the outright purchase and sale of such products.

It is contended by the plaintiff, however, that such purchases were made for the sole purpose of facilitating the marketing of the balance of the products and that same was done without profit.

An analogy of reasoning was employed in Atlantic Coast Distributors. v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 733, where 20 per cent. of the gross income was outside business.

2. The object of such purchases, according to the testimony, was to enable the plaintiff to fill orders and meet its contracts without delay and that same was essential and necessary in the conduct of that character of business. As an illustration, and in accordance with the evidence, the plaintiff was obliged to make provision in advance for the sale of the products of its members and other producers.

This involved the making of contracts to furnish specified quantities of the product. It frequently turned out that the members were unable to supply the exact quantity within the time prescribed by the contract and in order to meet the obligations incurred it became necessary for the plaintiff to purchase outright small quantities from dealers and producers.

The court was impressed that this was essential to successful operation. It was occasioned by the difficulty experienced in making accurate surveys of the productions among members and other producers available for the market. To meet such inaccuracies, it became necessary to carry out contracts by making purchases from dealers and producers who were not interested in the co-operative marketing plan. Such a viewpoint has been approved by the Internal Revenue office in other cases under other similar laws. For instance, under a prior statute and a somewhat similar law, in June, 1923, the Commissioner of Internal Revenue promulgated the following:

"The M Company is engaged in the manufacture and sale of dairy and other farm products and the purchase of general farm supplies. At times it becomes necessary for this corporation to purchase supplies from other co-operative creameries so that contracts with patrons may be fulfilled.

"Held, that inasmuch as the above corporation does not purchase produce from other than members, except that in cases of emergency when the amounts supplied by members are not sufficient to fill outstanding orders a sufficient amount for such purpose is purchased from other co-operative creameries, and in view of the fact that its other activities are not such as to deprive it of exemption, the M Company is an exempt corporation under the provisions of Section 231 (11) of the Revenue Act of 1921."

3. The uncontradicted evidence was that these outright purchases did not yield a profit to the plaintiff. On the contrary, the evidence was that such purchases were made as the emergency arose and without reference to the question of values. The price necessary to obtain the quantity required was paid as demanded by the dealer. Such dealers and other producers demanded the full market price and understood that they were not to participate in any returns.

Plaintiff made such purchases not with the idea of an investment or profit, but with the sole object of meeting a contract obligation. Under these circumstances, there would be no reason for depriving the plaintiff of the exemption.

The tax was imposed upon the theory that a substantial portion of the business transacted by the plaintiff was done outside the exemption provisions and for a profit. The uncontradicted testimony shows the contrary.

Under such circumstances the tax was illegally exacted and plaintiff is entitled to

have same refunded. Accordingly, judgment will be entered for the amount paid for each of the years mentioned with interest at 6 per cent. from the date of payment.