## METROPOLITAN BUSINESS COLLEGE v. BLAIR, Commissioner of Internal Revenue.

Circuit Court of Appeals, Seventh Circuit.
February 16, 1928.

No. 3969.

1. Internal revenue ⊚⇒7(28)—Corporation having capital of $100,000, conducting business college with 12 branches and employing 54 teachers, held not "personal service corporation," within statute (Revenue Act 1918, §§ 200, 218 [Comp. St. §§ 6336⅛a, 6336⅛i]).

Where corporation, having capital of $100,000 and most of whose stock was owned by three officers actively engaged in managing its affairs, conducted business college with 12 branch schools and derived its revenue mainly from tuition fees of its 5,000 students, with a teaching force of about 54, and had upwards of $40,000 invested in furniture, fixtures, and other teaching paraphernalia, and carried as a capital asset on its books good will at about $67,000, besides other property, held, that its income was not "to be ascribed primarily to the activities" of such stockholders, so as to make it a "personal service corporation" for tax purposes, within Revenue Act 1918, §§ 200, 218 (Comp. St. §§ 6336⅛a, 6336⅛i).

2. Internal revenue ⊚⇒7(17)—Taxpayer held not entitled to deduction from gross income for exhaustion of leaseholds.

In absence of showing how long corporate taxpayer's leases had to run, provisions thereof, or amount invested therein, taxpayer held not entitled to annual deduction from gross income for taxation purposes on account of exhaustion of leaseholds.

Petition for review of order of United States Board of Tax Appeals.

Petition by the Metropolitan Business College against David H. Blair, Commissioner of Internal Revenue, for review of a decision of the United States Board of Tax Appeals. Affirmed.

Arnold R. Baar, of Chicago, Ill., for petitioner.

John W. Fisher, of Chicago, Ill., for respondent.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. [1] Petitioner, a corporation, attacks an order of the Board of Tax Appeals fixing petitioner's unpaid tax for 1918 at $8,051.06, and for 1919 at $5,478.23, which accords with the finding of the Commissioner of Internal Revenue, from whose determination petitioner had prosecuted an appeal to the board.

The broad question is whether petitioner is a "personal service corporation," within the meaning of section 200 of the Revenue Act of 1918 (Comp. St. § 6336⅛a), which reads:

"That when used in this title— * * * The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor, * * *" such corporations being, by section 218 (Comp. St. § 6336⅛i), not taxable as corporations generally, but its stockholders taxable as partners.

Petitioner's business, as its name would indicate, is that of commercial education, its revenue being derived mainly from the tuition paid therefor. For many years it has conducted this business with its principal school in the downtown district of Chicago, and 12 branch schools in different parts of the city and in the nearby cities of Elgin, Joliet, and Aurora, each branch being in charge of a teacher manager. Its president, O. M. Powers, founded the business in 1873, and personally conducted it until incorporation in 1897, and thereafter continued to be its president, controlling the policies, methods, and courses of study of the school. During the years 1918 and 1919, of a total capital of $100,000, consisting of 1,000 shares, Powers held 810, Stevens, vice president and secretary, 113, and Reynolds, treasurer, 47. The remaining 30 shares were held by Powers' children. Stevens and Reynolds were very active in the conduct of the business, devoting much of their time to it under the general direction of Powers.

It is apparent that the persons named fulfill the statutory specification of "principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation"; but does it appear that for these years the corporate "income is to be ascribed primarily to the activities" of these individuals? The student body, numbering about 5,000 for the two years, was taught in the various schools by a teaching force of about 54 employed by the corporation. The bare statement of these facts tends strongly to repel the conclusion that the corporate income is ascribable primarily to the activities of these corporate officers.

If this were a prosperous manufacturing corporation, employing many skilled workmen and capable foremen, salesmen, and the like, it could not be said that the corporate income was primarily attributable to the activities of the few others who, in managerial capacity, successfully planned and dominated the corporate affairs. The absolute indispensablility of a competent working force would be too apparent to ascribe to management primacy of influence in producing corporate income.

The teaching body is here a skilled working force, without which the income would have been restricted to such as would arise from a student body which these three men alone might handle. Stenographers, messengers, and others serving them in personal capacity, might well be said to be incidental to the management, and such service would not prevent the conclusion that the personal activities of the managing stockholders were a primary factor in producing the income. But teachers, who come in contact with the student body, are in a very different class. They should have education, intelligence, tact, perseverance, and patience—in short, a combination of virtues not too often found, or even expected, in some of the other professions. However much and well Mr. Powers and his associate owners may have planned and directed, and however completely have dominated their teachers, the teacher, after all, is not a mere personal server of the directing owners.

Probably petitioner's very success is ascribable largely to wisdom in the choice of competent teachers; at least it may be safely said that the petitioner would be the first to resent the imputation that its teachers were mere rubber stamps or talking machines.

The tuition which the students pay is earned in the main—indeed, it may be said "primarily"—through their contact with the teachers, to whose activities, certainly not less than to those of these managing stockholders, the corporate income is primarily ascribable.

If during these years capital was a material income-producing factor, petitioner's claimed status as a "personal service corporation" must, on this further ground, fail. It seems that during these years petitioner had invested in so-called fixtures upwards of $40,000, representing the capital value of its desks, chairs, typewriting machines, and other furniture, fixtures, and teaching paraphernalia in the 13 schools, and carried also a stock of teaching stationery of about $4,000. That all this was capital cannot be gainsaid, and that it was "income-producing" is as certain as the fact of its employment in the process of conferring education upon the students who were paying the price. The things represented by this capital investment constituted the "plant," which, directly operated by the teaching force, under the general direction of the management, conferred the education which produced the income.

There was also capital represented by an advance of $8,400 to the Orr Business College, and of $7,000 to a text-book concern, from which there was further substantial income, and there was borrowed money of $4,800 in 1918 and $3,600 in 1919. There was also income from subleases, of $8,198 in 1918 and $9,937 in 1919.

Then there is the item of good will, which was carried by the corporation as a capital asset at about $67,000. While it may be logically correct to say that, if this item was in no sense income-producing, it should not have been carried as a capital asset, this reasoning alone might not justify the ascribing of income to it. But no doubt in the good will value there is to an extent included the value of advertising for an indefinite period beyond that in which the cost of it was incurred. Quite a few thousand dollars were expended each year for catalogues, solicitation, and newspaper advertising and to the extent that this might be said to have value beyond that specific time, it may be considered a capital asset having good will value, and influential in producing income.

We need not undertake to fix the precise amount or proportion which these several factors contributed to petitioner's income, nor to fix definite bounds and limits to the word "material" as employed in section 200; but we do say that, considering all of the enumerated items, and even without some of them, the conclusion is inevitable that capital was a material income-producing factor. [2] Upon the board's announcement of its finding and opinion adversely to petitioner, and that under its rule 50 an order of redetermination will be entered on 15 days' notice, petitioner presented a proposed redetermination whereunder the tax would be reduced to about half of what the board fixed. This was based largely on the contention that two of petitioner's leaseholds, having considerable of alleged value, should have been the subject of an annual deduction of $2,500 from gross income on account of exhaustion. We do not think there appears in the evidence any basis for such deduction. It was not shown how long the leases had to run, nor what any of their provisions were, nor that petitioner ever invested anything in them. Nor was there any offer or undertaking to adduce any further evidence. The petition for appeal to the board from the commissioner's determination raised only the question whether petitioner was a personal service corporation within the meaning of section 200, and this question alone was heard on the appeal, and the board's opinion and redetermination was rested on the ground alone that capital was a material income-producing factor, and that therefore petitioner was not such a corporation. In this state of the record we conclude the board was justified in entering its order fixing the tax in accordance with its finding and opinion.

The order of the Board of Tax Appeals is affirmed.