**NEW ORLEANS SHIPWRIGHT CO., Limited, v. COMMISSIONER OF INTERNAL REVENUE.**

Circuit Court of Appeals, Fifth Circuit. July 6, 1928.

No. 5158.

1. **Internal revenue** ⟨⟩7(28), 9(27)—**That all stockholders were engaged in other occupations is immaterial in determining whether corporation is personal service corporation within Revenue Acts (Revenue Acts 1918, 1921, § 200 [Comp. St. § 6336⅛a]).**

That all stockholders were engaged in other occupations than that of corporation is immaterial, in determining whether it is a personal service corporation within Revenue Acts 1918, 1921, § 200 (Comp. St. § 6336⅛a), as it is not mere amount of time given to superintendence of corporation's affairs, but income-producing activities of stockholders, that governs.

2. **Internal revenue** ⟨⟩7(28), 9(27)—**Shipwright corporation, securing business solely through principal stockholders' efforts, held "personal service corporation" within Revenue Acts (Revenue Acts 1918, 1921, § 200 [Comp. St. § 6336⅛a]).**

Shipwright corporation, all or nearly all of business of which was secured solely through efforts of its principal stockholders, *held* a "personal service corporation" within Revenue Acts 1918, 1921, § 200 (Comp. St. § 6336⅛a).

3. **Internal revenue** ⟨⟩7(28), 9(27)—**That shipwright corporation employed clerks and laborers held immaterial in determining whether it is personal service corporation within Revenue Acts (Revenue Acts 1918, 1921, § 200 [Comp. St. § 6336⅛a]).**

That shipwright corporation employed clerks and laborers in conduct of its business *held* immaterial in determining whether it is a personal service corporation within Revenue Acts 1918, 1921, § 200 (Comp. St. § 6336⅛a); such clerks producing no revenue, and labor being furnished to customers at a profit.

4. **Internal revenue** ⟨⟩7(28), 9(27)—**Revenue Acts should be construed liberally to put personal service corporations on parity with partnerships doing same kind of business (Revenue Acts 1918, 1921, § 200 [Comp. St. § 6336⅛a]).**

Revenue Acts 1918, 1921, § 200 (Comp. St. § 6336⅛a), defining personal service corporation, should be construed liberally to end, clearly intended, that such corporations be put on a parity with partnerships doing same kind of business.

Petition by the New Orleans Shipwright Company, Limited, to review a judgment of the United States Board of Tax Appeals in favor of the Commissioner of Internal Revenue. Reversed.

Nicholas Callan, of New Orleans, La., and E. Barrett Prettyman, of Washington, D. C., (William E. Lamb, of Chicago, Ill., and Karl D. Loos and Frederick R. Gibbs, both of Washington, D. C., on the brief), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., A. W. Gregg, General Counsel, Bureau of Internal Revenue, of Washington, D. C., Morton P. Fisher, Sp. Asst. Atty. Gen., J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Sewall Key, Sp. Asst. Atty. Gen., C. M. Charest, General Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. The petitioner filed returns for income and profits taxes for the years 1918, 1920, and 1921 as a personal service corporation. The Commissioner of Internal Revenue held it was not such a corporation, and determined deficiencies amounting to $59,886.10 for these years. Appeals were taken to the Board of Tax Appeals, and the cases were consolidated and referred to a division consisting of one member. Evidence was taken before the division, and he made findings of facts which are not disputed. Those material to a decision are, in substance, as follows:

Petitioner is a Louisiana corporation, organized in 1902, with a capital of $5,100, divided into 51 shares, of which Alfred Le Blanc owns 17 shares, Robert A. Warriner and Matthew Warriner, who do business as a firm, own 8½ shares each, and M. J. Sanders owns 9 shares. All of the above-named stockholders are agents for regular British steamship lines at New Orleans. Edward Nathan owns the remaining 8 shares. His principal business is that of ship broker, and he was secretary, treasurer, and manager of the corporation. None of the stockholders received a salary, but Nathan was given a bonus over his regular dividend for supervising the work and looking after the details of the business. The corporation was organized with the knowledge and consent of the principals of the ship agents who were stockholders. Vessels taking cargo at New Orleans are sometimes required to be specially fitted with stalls, shifting boards, platforms, and other temporary structures, to protect the ship and cargo, differing with each ship and each cargo. The corporation was organized for the purpose of doing this kind of work, and after its incorporation did such work for the lines represented by its majority stockholders. Prior thereto the work had been given out to contractors by these stockhold-

ers as agents for their respective lines. In doing the work, lumber and other materials were purchased on credit, for which bills were rendered monthly. A foreman and an assistant were employed. A bookkeeper and a clerk were also engaged. There were no other regular employees. The necessary labor for each job was hired by the foreman, by the day. The work was done on a cost plus basis, the corporation receiving at first 10 per cent., and later 15 per cent., commission. Petitioner did very little work for others than the lines represented by the stockholders. Bills for this were presented to the agents immediately after its completion, and promptly paid within a few days.

The overhead expenses amounted to $4,-599.60 in 1918, $12,275.39 in 1919, $6,939.02 in 1920, and $6,708.56 in 1921. The gross value of materials, supplies, and labor amounted to $445,308.24 in 1918, $127,326.-47 in 1920, and $89,063.38 in 1921. The net profits were $37,939.30 for 1918, only $4.44 for 1919, $31,440.93 for 1920, and $26,936.24 for 1921. All of the stockholders were also engaged in other gainful occupations.

On the facts found as above, the division rendered judgment in favor of petitioner. Under a general order of the chairman, the case was referred to the whole Board, which, without any further hearing, reversed the division and entered judgment in favor of the Commissioner.

Petitioner urges the illegality of the reference to the whole board and its decision without a hearing. In view of the provisions of section 601 of the Revenue Act of 1928, amending section 907 of the Act of 1924 (26 USCA § 1219) it would be useless to consider this question.

[1] Section 200 of both the Revenue Acts of 1918 and 1921 (Comp. St. § 6336⅛a), so far as material, provides as follows:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor."

[2] It is clear from the above statement of facts that the capital of the corporation was not a material income-producing factor. It is true all the stockholders were engaged in other occupations but that has no bearing on the case, as it is not merely the amount of time given to the superintendence of the

affairs of a corporation, but the income-producing activities of the stockholders, that governs. Each ship fitted represented a separate contract, and the ship agents were under no obligation to award it to petitioner. If in each case one of the stockholders had solicited the work, it could not be said he was not regularly engaged in the active conduct of the affairs of the corporation. We can see no difference in principle here. All, or nearly all, of the business done by the corporation, was secured through the efforts of the principal stockholders. Without their efforts in its behalf, it would not have been received at all.

[3] That the corporation employed clerks and laborers in the conduct of the business is immaterial. The clerks produced no revenue, and the labor was furnished to the customers at a profit, the same as any commodity.

[4] In adopting section 200, defining a personal service corporation, it was clearly the intention of Congress to put such corporations on a parity with partnerships doing the same kind of business. The section should be construed liberally to that end.

The judgment rendered by the Board is not supported by the facts found, and is erroneous.

Reversed.