**STRAYER'S BUSINESS COLLEGE, Inc., v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

Circuit Court of Appeals, Fourth Circuit. October 15, 1929.

Nos. 2828, 2829.

J. Wallace Bryan, of Baltimore, Md. (Murray T. Donoho, of Baltimore, Md., on the brief), for petitioner.

F. Edward Mitchell, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

NORTHCOTT, Circuit Judge. The petitioner corporation was organized under the laws of the state of Maryland, in April, 1898, for the purpose of conducting and maintaining schools for the business education of young men and women, and for related purposes. Its principal office is in Baltimore, Md. During the years in controversy, it operated a school in Baltimore and a branch school in Washington, D. C.

The capital stock was $5,000, divided into 500 shares of common stock of the par value of $10 each. Since May, 1910, 497 shares of this stock have been owned by Thomas W. Donoho; the remaining 3 shares are held as qualifying shares by Donoho, his wife, and two sons. The consideration for the capital stock consisted in equipment, accounts receivable, scholarships, and good will of a total value of $5,500, which sum, less liabilities of $500, constituted net book value for which capital stock was issued.

The school was originally organized by one S. Irving Strayer; Donoho becoming vice president and business manager in the year 1902. In 1904 and 1905 branch schools were opened in Philadelphia and Washington, and subsequently a school was also opened in Camden, N. J. Until the year 1910, the operation of the schools was not, as a whole, successful. In the latter year petitioner had become financially involved, and was in debt about $20,000, evidenced by notes, all of which bore Donoho's personal indorsement.

Under pressure of this situation, Donoho took over the Baltimore and Washington schools, agreeing to pay all the liabilities except those specifically assumed by Strayer, and from that time the Baltimore and Washington schools began to build up until they were finally, in the years in question, very successful from a financial standpoint.

The Baltimore and Washington schools did not board or lodge any of their students. The Baltimore school had an average attendance of approximately 200 day students and 175 night students; the Washington school had about 150 day students and 200 night students. Instruction was given by a corps of 10 to 12 regular teachers in each school. None of the teachers participated in the management or was in control or charge of any course or group of courses; these being directly and exclusively under the control of Donoho and P. J. Harman, who was employed as resident principal of the Washington school, at a salary equal to one-half of the net profits of that school, if any.

Petitioner never owned any real estate. It leased quarters for school purposes in Baltimore and Washington, and equipped the rooms with the usual schoolroom paraphernalia and office furniture, and carried in stock text-books, stationery, and school supplies, which it sold exclusively to its students. This was done in order to insure uniformity in texts and materials, and promptness of supply, as well as to meet the convenience of the students. It was not practicable to require the students to purchase texts and supplies outside. The petitioner did not own or publish any books or texts, and had no income from, nor investment or interest in, any facilities for the publication, manufacture, or production of books, material, or supplies, but made its purchases in the general market.

The petitioner conducted an employment or "placement" department through which it undertook to obtain positions for its graduates. This department, as to the Baltimore school, was conducted by Donoho or under his immediate supervision.

No stockholders' or directors' meetings were held after 1910, except a meeting in 1920, which authorized the salary of $30,000 for Donoho. There were no officers other than Donoho, except that his wife performed

some duties as secretary. Donoho devoted all of his time to the conduct of the petitioner's affairs. Practically the entire business of the petitioner was conducted, and every corporate activity was performed or directed, by Donoho. He gave no classroom instruction. Among the duties performed by Donoho as president and principal stockholder of the petitioner were the following:

(a) Organizing, planning, and supervising the courses of study.

(b) Selecting and changing texts to be used.

(c) Selecting, employing, and discharging teachers; fixing their compensation.

(d) Directing all teaching and classroom methods.

(e) Borrowing on his personal indorsement such money as was needed for financing the petitioner's current operations.

(f) Conferring with prospective students.

(g) Obtaining employment, through the placement division, for trained graduates.

Donoho visited the Washington school two or three times a week, and gave it his direct and personal supervision, and during the year 1919, while Harman was busy with another enterprise, O. S. Schuster was employed as manager of the Washington school.

During the period from 1910 to 1918, while Donoho was paying off the indebtedness of approximately $20,000 which he assumed at the time he purchased the stock of the petitioner, he drew as little by way of salary or other compensation as he could get along with. During the years 1917 to 1919 no salary was formally voted to him as such, but he drew out from time to time such amounts as he needed. In 1920 and 1921 salaries aggregating $30,000 for each year were authorized and approved, as being commensurate with his work and responsibilities, and these salaries were actually credited to his account and paid him at various times during each of said years.

The amounts of cash actually drawn by Donoho from the two schools in each of the years under review were as follows:

|  | 1917 | 1919 | 1920 | 1921 |
|---|---|---|---|---|
| Baltimore School | $ 7,300 | $19,224 | $26,435 | $40,491 |
| Washington School | 5,104 | 6,510 | 9,030 | 8,322 |
| Total drawings | $12,404 | $25,734 | $35,465 | $48,813 |

The petitioner filed its income and profits tax return for 1917 as an ordinary corporation. In 1919 it filed an amended return for 1917 under the provisions of section 209 of the Revenue Act of 1917 (40 Stat. 307). Its returns for 1918, 1919, 1920, and 1921 were filed as a personal service corporation. The respondent held that the petitioner was entitled to a personal service classification for 1918, and settled its taxes for that year accordingly. The respondent denied that the petitioner was a nominal capital corporation for 1917 or a personal service corporation for 1919, 1920, or 1921.

The respondent subsequently made an assessment of an alleged deficiency of $2,296.82 for the year 1917, in respect to which the petitioner seasonably filed its claim in abatement. After further conferences, the deficiency for 1919 was reduced by the respondent to $3,615.84, and $1,095.53 of the additional assessment for 1917 abated, the effect of which was to assess a net deficiency of $1,201.29 for the year 1917.

The deficiencies determined by the respondent are as follows:

| | |
|---|---|
| 1917 | $ 1,201 29 |
| 1919 | 3,615 84 |
| 1920 | 3,236 59 |
| 1921 | 4,776 70 |
| Total | $12,830 42 |

From this determination the petitioner appealed to the Board of Tax Appeals, which Board sustained the findings of the respondent in a majority opinion upon which action the petition to review the decision of the United States Board of Tax Appeals was filed in this court.

Three questions present themselves for determination: First. Was the petitioner entitled to have its tax for the year 1917 computed under the provisions of section 209 of the Revenue Act of 1917? Second. Was the petitioner entitled to classification as a personal service corporation in the years 1919, 1920, and 1921? Third. Was the action of the Commissioner of Internal Revenue in reducing the amount of salary allowed Donoho for the years 1919, 1920, and 1921 correct?

As to the first question, section 209 of the Revenue Act of 1917 provides: "Sec. 209. That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction."

We are of the opinion that the findings of fact of the Board of Tax Appeals show that petitioner had no more than a nominal capital in the year 1917.

The Income Tax Regulation approved October 3, 1917, art. 73, provides: "The term nominal capital as used in section 209 means in general a small or negligible capital whose use in a particular trade or business is incidental. * * *"

See, also, R. H. Martin, Inc., v. Edwards (D. C.) 293 F. 258.

The question of capital incidental to the business carried on under the Revenue Act of 1918 (40 Stat. 1057) was fully discussed by this court in the Atlantic Coast Distributors v. Commissioner of Internal Revenue, decided July 1, 1929, 33 F.(2d) 733, and, if the petitioner's capital is not nominal, it would be difficult indeed to conceive of a corporation having no more than a nominal capital. The term "nominal capital" must mean a very small or negligible capital "whose use in a particular business is incidental." Here the petitioner's capital was only $5,000, with no investments other than those directly incident to the business carried on. This small capital was used chiefly for the purchase of furniture and equipment, and for the purchase of text-books, supplies, and stationery, which were resold to the students, in order to insure uniformity. Certainly this use of this amount of capital could not be deemed other than "incidental," and the capital considered other than "nominal." The action of the Board of Tax Appeals, with respect to the year 1917, was erroneous. See, also, Park Amusement Co. v. McCaughn (D. C.) 14 F.(2d) 553; Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410; Posse-Nissen School of Physical Education v. United States (D. C.) 25 F.(2d) 748; Mountain View Sanitarium Co. v. Huntley (D. C.) 25 F.(2d) 1016; Appeal of Bryant & Stratton Commercial School, 1 B. T. A. 32.

On the second question, as to whether the petitioner is entitled to be classified as a personal service corporation for the years 1919, 1920, and 1921, we are also of the opinion that the conclusion reached by the Board of Tax Appeals was erroneous.

The Revenue Act of 1921, § 200 (42 Stat. 227), provides: "Sec. 200. (5) The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive."

The provisions of the Revenue Act of 1918 are substantially the same, and may be found in chapter 18, 40 Stat. 1057.

The applicable regulations of the Commissioner of Internal Revenue under these acts are as follows:

"Regulations 45 and 62. Art. 1523. *Personal Service Corporation.*—The term 'personal service corporation' means a corporation, not expressly excluded, the income of which is derived from a profession or business (a) which consists principally of rendering personal service, (b) the earnings of which are to be ascribed primarily to the activities of the principal owners' or stockholders, and (c) in which the employment of capital is not necessary or is only incidental. No definite and conclusive tests can be prescribed by which it can be finally determined in advance of an examination of the corporation's return whether or not it is a personal service corporation. * * *

"Regulations 45 and 62. Art. 1528. *Activities of Stockholders of Personal Service Corporation; Conduct of Affairs.*—Where the principal owners or stockholders do not render the principal part of the services, but merely supervise or direct a force of employees, the corporation is not a personal service corporation. If employees contribute substantially to the services rendered by a corporation, it is not a personal service corporation unless in every case in which services are so rendered the value of and the compensation charged for such services are to be attributed primarily to the experience or skill of the principal owners or stockholders and such fact is evidenced in some definite manner in the normal course of the profession or business. The fact that the principal owners or stockholders give personal attention or render valuable services to the corporation as a result of which its earnings are greater than those of a corporation engaged in a like or similar business, the principal owners or stockholders of which do not devote personal attention to the management or supervision of its affairs, does not of itself constitute the corporation a personal service corporation."

It will be seen that three things are necessary to entitle petitioner to the classification of a personal service corporation: (a) The income must be derived from a profession or business, consisting principally of rendering personal service; (b) the earnings are to be ascribed primarily to the activities of the principal owners or stockholders; and (c) the employment of capital is not necessary or is only incidental.

That the income of petitioner for the years in question was derived from a business which consisted principally of rendering personal service cannot be doubted. It is readily apparent from the facts, as above stated, that the education of students in business principles is a personal service, and the income of petitioner was derived from that source. The incidental profit derived from the sale of text-books and supplies to students, a course made necessary in order to secure uniformity, certainly cannot be held to change the character of the corporation. Bryant & Stratton Commercial School Case, supra; Atlantic Coast Distributors v. Commissioner of Internal Revenue, supra, and authorities there cited.

Again it seems to us that it cannot be doubted that petitioner's earnings are directly ascribed primarily to the activities of the principal owner or stockholder, Donoho. The petitioner, since the year 1910, was a one man corporation, and its financial success, in view of its history, can only be attributed to the activities of Donoho. The Washington school, while not so directly under his supervision and control as the Baltimore school, was equally successful during the absence of Harman in the year 1919, as during the time when Harman was with it, and Donoho, who visited the Washington school regularly three or four times a week, was undoubtedly primarily responsible for the success of both schools.

We thoroughly agree with the reasoning of the committee on Appeals and Review of the Bureau of Internal Revenue, when it said (A. R. R. 24): "A corporation conducting a commercial school which has both home study and resident instruction departments, but which does not lodge or board any of its students, and where the principal owners give all their time and attention to the preparation of courses, syllabus of work, inspection of higher lessons and settling points in dispute, and where capital is not a material income-producing factor, is properly classi-fied as taxable under Section 209 of the Revenue Act of 1917 and as a personal service corporation under the Revenue Act of 1918."

See, also, Bryant & Stratton Commercial School, Inc., supra, where the Board said: " * * * The fact that many teachers are employed to give instruction, while it shows that the income is not attributable solely to the activities of stockholders, does not prove that the stockholders are not the primary source of income."

Respondent relies principally on the decision of the Circuit Court of Appeals (Seventh Circuit) in the case of Metropolitan Business College v. Blair, 24 F. (2d) 176, but a study of that case shows that it is easily distinguished from the instant case. In that case the Metropolitan Business College was a corporation conducting thirteen schools, with a student body numbering about 5,000 for the two years involved, and the teaching corps of about 54. The Metropolitan Business College had a capital of $100,000 consisting of 1,000 shares, with three principal stockholders, and conducted indirectly a textbook printing business from which it derived a substantial income. There was also a substantial income from subleases, and this case presents a very different one from that presented in the case under consideration. We are of the opinion that it was the evident intention of Congress to grant personal service classification to corporations of the character of the petitioner in this case.

With regard to requirement (c) as to whether the employment of capital is necessary or only incidental, the same reasons above applied to the classification for the year 1917, and the authorities quoted on that point apply with equal force to this qualification, and we therefore conclude that the capital used was only incidental.

In view of our conclusion as to the first and second points, it is not necessary to discuss the correctness of the respondent's action in reducing the allowance to Donoho for salary in the years 1919, 1920, and 1921. It is admitted that Donoho accounted for the sums received by him as salary in his personal income tax returns for the years in question.

For the reason, above given, we are of the opinion that the deficiencies determined by the respondent, as approved by the Board of Tax Appeals, were incorrect, and the judgment of the Board of Tax Appeals is reversed.