## G. ANGELO & CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, First Circuit.
December 4, 1929.

No. 2367.

Anderson, Circuit Judge, dissenting.

Robert C. McKay, of Boston, Mass., for petitioners.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a petition for review of a final order of redetermination of the United States Board of Tax Appeals of October 26, 1928, involving deficiency taxes of $3,509.50 and $2,141.05, assessed against the G. Angelo Company in the years 1919 and 1920, respectively, pursuant to the provisions of the Revenue Act of 1926 (Act of February 26, 1926), c. 27, §§ 1001–1003, 44 Stat. 9, 109, 110 (26 USCA §§ 1224–1226).

The sole question is whether the petitioner, the G. Angelo Company, for the years 1919 and 1920, was entitled to classification as a personal service corporation, as defined in section 200 of the Revenue Act of 1918.

The Revenue Act of 1918, c. 18, 40 Stat. 1057, 1058, 1075–1077, 1088, 1090, provides:

"Sec. 200. That when used in this title — * * *

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive."

"Sec. 230. (a) That, * * * there shall be levied, collected, and paid for each taxable year upon the net income of every corporation a tax. * * *

"Sec. 231. That the following organizations shall be exempt from taxation under this title— * * *

"(14) Personal service corporations."

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *"

"Sec. 301. (a) That * * * there shall be levied, collected, and paid * * * upon the net income of every corporation a tax. * * *"

"Sec. 304. (a) That the corporations enumerated in section 231 shall, to the extent that they are exempt from income tax under Title II, be exempt from taxation under this title."

The Board of Tax Appeals found that the petitioner was a Massachusetts corporation doing business in Boston; that during the years 1919 and 1920 it was engaged in the business of buying and selling bananas, imported by the Fruit Dispatch Company of Boston; that all purchases made by the petitioner from that company were in the name and upon the responsibility of the petitioner; that the Fruit Dispatch Company gave the petitioner a credit of 30 days on its purchases, and invoiced them to the petitioner at prices regularly quoted by the Fruit Dispatch Company, but subject to an allowance or so-called commission of 5 per cent. on such prices; that the petitioner sold the bananas to small dealers, with whom the Fruit Dispatch Company did not care to deal, and to Italians, who preferred to buy from the petitioner; that the petitioner sold the bananas to its customers for cash, or on a 10 days' credit, at the prices regularly quoted by the Fruit Dispatch Company; that deliveries were made from the docks, where the fruit steamers landed, to the places of business of the petitioner's customers, at the Fruit Dispatch Company's expense; and that when the money was collected it was turned over to the Fruit Dispatch Company, which made the 5 per cent. deduction and paid the same to the petitioner.

It also found that the outstanding capital stock of the petitioner was $25,000, equal amounts of which were held by each of its five stockholders; that the stockholders were all directors of petitioner, were actively engaged in the conduct of its business, and that their duties consisted of keeping informed of the arrival of cargoes of bananas, of personally keeping in touch with fruit peddlers and Italian fruit dealers, of soliciting their orders, and collecting the proceeds of sales; that they often worked from 14 to 20 hours a day; that the petitioner employed one man at the dock and at times made sales through brokers, paying them a commission; that no salaries were voted or paid to its stockholders; that it paid the employee at the dock a salary of $2,608.33 in 1919 and $2,625 in 1920; that it paid commissions of $2,882.87 in 1919 and $5,473.07 in 1920, for sales through brokers; that it had bad debts amounting to $238.68 in 1919 and $366.18 in 1920; that its gross income for 1919 was $29,482.29, of which $26,928.05 represented the 5 per cent. deduction on purchases, and that the total expenses were $9,321.57, making a net income of $20,160.72 for that year; that its gross income for 1920 was $37,358.62, of which $35,760.37 represented the 5 per cent. deduction on purchases, and that the total expenses were $11,905.51, making a net income of $25,453.11, for that year; and that from these profits the stockholders were paid dividends in 1919 and 1920.

The petitioner filed tax returns as a personal service corporation. The Commissioner denied it such a classification and determined a deficiency in income and profits taxes. The Board of Tax Appeals redetermined the deficiency, making an allowance for the reasonable value of the services of the stockholders as a deductible expense.

As the Board of Tax Appeals has found that $26,998.05 of the petitioner's profits for the year 1919, and $35,760.37 of its profits for 1920, were profits of its business derived from trading as a principal in these years, and as these profits, not including other profits, derived each year as such a trader, exceeded by more than 50 per cent. of the gross profits of the business in each of these years, the ruling of the Board that the petitioner was not a personal service corporation, within the meaning of section 200, must stand, unless there was no substantial basis afforded by the evidence, or the subsidiary facts found, from which the conclusion could be drawn that the sums of $26,998.05 in 1919, and $35,760.37 in 1920, were profits of its business derived from trading as a principal; for otherwise no question of law is presented for our consideration, our power of review being limited to questions of law. Blair v. Curran (C. C. A.) 24 F.(2d) 390, 392; De Ford v. Commissioner (C. C. A.) 29 F.(2d) 532; Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42.

The evidence submitted before the Board of Tax Appeals is not contained in the record here presented, but the subsidiary facts found by the Board are before us. According to these facts the petitioner, during the taxable years in question, bought bananas from the Fruit Dispatch Company on 30 days' credit and sold them for cash, or on a 10 days' credit, to small dealers, with whom the Fruit Dispatch Company did not care to deal, and to Italians, who preferred to buy from the petitioner; that the prices paid for the bananas were the regular prices quoted by the Fruit Dispatch Company less "an allowance or so-called commission of 5 per cent" on these prices; and that the price it received was the regular price quoted by the

Fruit Dispatch Company. These facts constitute an adequate basis for the conclusion reached by the Board; that the sums of $26,998.05 and $35,760.37 were profits of the petitioner's business derived from trading as a principal, and it is not open to us to draw a contrary conclusion even if we were so disposed.

The order of the Board of Tax Appeals is affirmed.

ANDERSON, Circuit Judge (dissenting). In my view the facts found by the Board negative their conclusion that the petitioner is not entitled to classification as a personal service corporation. The three stockholders worked from 14 to 20 hours a day at the corporation's business, without salaries. Their activities consisted in obtaining orders, mostly from their Italian compatriots, for bananas, at prices fixed by the fruit company. The fruit was shipped by the fruit company, at its own expense, direct to these purchasers. The petitioner carried no stock of bananas. The fruit company invoiced the bananas thus sold to the petitioner, on a 30-day credit. But the Board expressly found that, under the course of business, it was seldom necessary to avail of a credit period longer than 15 days, "because the petitioners sold to their customers either for cash or on a 10-day credit, followed up collections closely, and promptly cut off the credit of any debtor who failed to make payment within a week or two"; that "when the cash was collected, it was turned over to the Fruit Company"; that the fruit company then paid to the corporation the 5 per cent. commission, agreed upon for the services rendered by the stockholders in getting the orders and making the collections. In no proper business sense was the plaintiff a trader; nor was its income in any substantial part profits; for it sold the bananas at prices fixed, not by itself as purchaser, but by the fruit company. The *profits* of a "trader" are the difference between his purchase price and selling price, made by himself—not by his vendor. Commissions for selling and collecting are not fairly called profits. While the title of the bananas may have passed through the plaintiff, its relations to the fruit company were more like those frequently (perhaps inaccurately) described as the relations of principal and agent, rather than those of vendor and vendee. Cf. Willcox & Gibbs Mch. Co. v. Ewing, 141 U. S. 627, 12 S. Ct. 94, 35 L. Ed. 882.

The income of this corporation clearly "is to be ascribed primarily to the activities of the principal owners or stockholders"; for it appears that in 1919, out of a gross income of $29,482.29, $26,998.05 was derived from commissions paid directly to the petitioners by the fruit company; that in 1920, out of a gross income of $37,358.62, $35,760.37 was derived from such commissions.

If the three stockholders had not formed a corporation and had had no capital whatsoever, but had proceeded as an impecunious partnership, their essential relations, both to the fruit company and to their customers, would not have been substantially changed. The capital of $25,000 did not figure materially in the business or in the income. The business was essentially the personal work of the three stockholders, and the income almost overwhelmingly commissions—not profits. The only capital that performed any function in the real business of this corporation was capital furnished by the buyers of the bananas; for they paid the petitioner for the bananas purchased by them, *before* the petitioners paid the fruit company for the same bananas. The petitioners' capital was not dynamic; it was static, a mere investment. Cf. Appeal of Bryant & Stratton Commercial School, 1 B. T. A. 32. For personal income the three stockholders annually took a large portion of their commissions, as dividends.

These views are in full accord with numerous decisions of other courts. Fuller & Smith v. Routzahn (D. C.) 23 F.(2d) 959; North Am. R'y Constr. Co. v. Commissioner (C. C. A.) 27 F.(2d) 493, 59 A. L. R. 1274; W. A. Gordon & Co. v. Lines (D. C.) 25 F.(2d) 894; New Orleans Shipwright Co. v. Commissioner (C. C. A.) 27 F.(2d) 214; Posse-Nissen School v. United States (D. C.) 25 F.(2d) 748; Atlantic Coast Distributors v. Commissioner (Fourth Circuit, C. C. A. July 12, 1929) 33 F.(2d) 733.