## ATLANTA–SOUTHERN DENTAL COLLEGE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5904.

Circuit Court of Appeals, Fifth Circuit.
May 27, 1931.

Thomas M. Stubbs, of Atlanta, Ga., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and A. G. Divet, Sp. Assts. to Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. L. Williams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., J. P. Jackson, Sp. Asst. to Atty. Gen., for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This case is here upon a petition for review of the finding and order of the Board of Tax Appeals sustaining the action of the Commissioner of Internal Revenue in refusing petitioner classification as a personal service corporation. The primary facts are fully and, fairly stated in the finding and opinion of the Board of Tax Appeals, in 15 B. T. A. 1325; they will not be restated here.

Petitioner was engaged in teaching, and it is admitted that if its evidence has brought it within the statutory definition, it is entitled to the classification claimed.

The relevant provisions of the statute are Revenue Act of 1921, c. 136, 42 Stat. 227, 228, 245:

"Sec. 218. * * * Personal service corporations shall not be subject to taxation under this title, but the individual stockholders thereof shall be taxed in the same manner as the members of partnerships. All the provisions of this title relating to partnerships and the members thereof shall so far as practicable apply to personal service corporations and the stockholders thereof."

"Sec. 200. That when used in this title * * * the term 'Personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor."

For an understanding of the case it is sufficient to say that petitioner is a corporation operating a dental college in Atlanta, Ga., having a capital stock of $50,000, and assets consisting of an interest in the building and equipment with which it conducts its school, of a value in excess of $100,000. It had a gross income of $101,000. Of this income $86,912.74 was derived from student fees; $12,558.88 from the operation of its dental infirmary. This infirmary operated as

an essential part of the teaching equipment for the purpose of giving the students clinical experience in the practice of dentistry, was so operated as that though it produced no net gain, but a net loss of $191, its quite considerable earnings, nearly 15 per cent. of the entire gross, converted what would otherwise have been a heavy loss, from that department, into an almost negligible one.

The board found that the faculty was composed of sixteen stockholding and seventeen nonstockholding professors paid, respectively, $21,476 and $19,000. In addition, $7,000 was paid to nurses and other nonstockholding employees, and there were some expenses for borrowed money, aggregating about $4,000. It also found that twenty-two stockholders held its 500 shares of stock; that sixteen of these, holding 66.8 per cent. of the stock, were regularly engaged in the active conduct of its affairs. That six, holding 33.2 per cent. of the stock, were not so engaged.

Upon these findings the board rested its ultimate finding that petitioner was not "a corporation whose income was to be ascribed primarily to the activities of the principal owners or stockholders themselves regularly engaged in the active conduct of its affairs." No comment was made by the board upon, and no significance apparently given to the fact of the large amount of capital invested in the business, or the large percentage which the gross earnings of the infirmary bore to its total gross.

█ Petitioner, fully recognizing that if there is evidence to sustain them the primary fact findings of the board are conclusive here, contends that while the board did not err in any of the primary findings set down by it in the record, it did err in making primary findings which, correct as far as they went, were but half findings, sufficient indeed to support the ultimate conclusion of the board, as the record made by the board runs, but erroneous in that they did not fully find the established facts which, if found, would have forced an entirely different conclusion.

Upon the point that more than 80 per cent. of the stock (T.DR sec. 62, art. 1529) was held by those regularly engaged in the active conduct of its affairs, they say that the board erred in excluding from the total of the stockholders so engaged Dr. Barnwell, holding 75 shares, whose 15 per cent. of the stock, added to the 66.8 per cent. conceded by the board, would make up the aggregate which the regulations require.

They say: "It is true, as found by the Board, that during the period involved Dr. Barnwell was vice-president of the corporation, attended its business meetings, and was subject to call as a special lecturer. It is true, as found by the Board, that he was not actively engaged in teaching, and during the period involved was not called upon to lecture; but the evidence goes much further and establishes not merely that this stockholder attended the business meetings of the corporation, but that he attended all such meetings, and what is of greater importance, that he took an active part in the formation of the policies of the corporation, and was always consulted about the business administration of petitioner, very much interested in it."

█ Upon the point made by the board that the income could not be ascribed primarily to the activities of the principal owners or stockholders, because, as found by it, "the seventeen non-stockholding professors and instructors were skilled employees, and were responsible for the production of a large portion of the petitioner's income, and their efforts at producing income may not be ascribed to the management," petitioner declares that the record establishes that it was the reputation for eminence in the dental profession of the stockholding professors which attracted students to the college; that every major subject in the course of instruction was taught by stockholding professors with possibly one exception; that the seventeen nonstockholding professors were really assistants and associate professors and worked under the direct supervision of the stockholding members of the faculty. That the vice president and superintendent, president, registrar and treasurer, the secretary, and all of the professors except one were stockholders. That every activity of the institution was either personally carried on by stockholders, or under their immediate direction, all executive management being vested in them, all of the contacts with prospective students being maintained by them, and all major subjects being taught by them. It cites Bryant & Stratton Com. School, 1 B. T. A. 32; Metropolitan Business College v. Com'r (C. C. A.) 24 F.(2d) 176; New Orleans Shipwright Co. v. Com'r (C. C. A.) 27 F.(2d) 214; Atlantic Coast Distributors v. Com'r (C. C. A.) 33 F.(2d) 733; Kaufman, Ltd., v. Com'r (C. C. A.) 24 F.(2d) 44; Strayer's Business College v. Com'r (C. C. A.) 35 F.(2d) 426; Fuller & Smith v. Routzahn (D. C.) 23 F.(2d) 959, to the proposi-

tion that the statute should be reasonably construed so as to give effect to the purpose and intent of the Congress to give to the stockholders of a corporation performing personal services the same tax position as would be accorded to them if they were doing the same kind of business under partnership forms.

Respondent, invoking the usual presumptions which are accorded to the decision of the commissioner and the findings of the board, Avery v. Com'r (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; Green's Advertising Agency v. Blair (C. C. A.) 31 F.(2d) 96, insisting upon petitioner's burden to clearly prove its claim to exemption from taxation, Cornell v. Coyne, 192 U. S. 418, 24 S. Ct. 383, 48 L. Ed. 504; Green's Advertising Agency v. Blair (C. C. A.) 31 F.(2d) 96, and opposing to petitioner's citations Metropolitan Business College v. Blair (C. C. A.) 24 F.(2d) 176; Wm. A. Brady Theatre Co. v. Com'r (C. C. A.) 42 F.(2d) 181; Crider v. Com'r (C. C. A.) 45 F.(2d) 974; Hatch v. U. S. (C. C. A.) 34 F.(2d) 436; Denver Live Stock Com. Co. v. Com'r (C. C. A.) 29 F.(2d) 543, 545, claims that if the matter here be decided upon a showing of hands, and by sheer weight of numbers alone, the board was right.

It says further that wholly apart from the grounds on which the board pitched its decision, that less than 80 per cent. of petitioner's stockholders were regularly employed in the business, and that because of the very important activities of the nonstockholding professors it could not be said that its income was to be ascribed primarily to the activities of its principal owners, the facts here admit of no other conclusion than that petitioner's capital was a material income-producing factor, both in the way of furnishing the place and equipment without which the teaching could not have been done and the income from student fees realized, but also in the production of gross income from the operation of the infirmary to the extent of nearly 15 per cent. of its total.

It must be admitted that there are decisions of the Board of Tax Appeals and of the courts applying this statute to varying facts which either in expressions used, or results reached, give some color to petitioner's claim to exemption, as it must also be admitted that the words used in the act to delimit corporations entitled to personal service classification are words not of art, but of general significance, in their nature equivocal, and

in close cases having a capacity for narrower or wider meaning, according to the point of view from which the inquiry is approached. Further, it is certainly true that in the construction and application of taxing statutes the judicial machinery should not be too tightly geared. The gearing should, indeed must, allow for a reasonable judicial back lash as the varying facts of particular cases are subjected to scrutiny. It is equally plain, however, that such judicial play as is allowed for must be within frictional limits, oscillatory rather than ambulatory, and that though when the matter for decision is merely quantitative, that is, as to the degree in which the statutory elements are present in a particular case, judicial minds may well differ in their conclusions, when there is no question of degree, but merely the qualitative one of whether the statutory elements are present, there is no room for such play but only for the exercise of strong common sense, under the influence of which the words of the statute, rather than its supposed spirit, must control.

In short, while it is no doubt an entirely proper construction in cases of corporations conducting a personal service business, such as teaching where the business is conducted through the personal activities of the incorporators though other persons are employed to make practically effective the enterprise and efforts of the incorporators, and though some capital though small is actually used, to view from a liberal standpoint the question of whether the activities of those employed by the incorporators are secondary or primary, and whether the capital is a material income producing factor [Shipley School v. McCaughn (C. C. A.) 34 F.(2d) 281], quite the other point of view should control where the facts present the case of a carefully organized and articulated corporation, thoroughly financed, doing a large and profitable business with the employment of a considerable amount of capital and the use of a large force of nonstockholding, skilled service of the same general grade and character as that rendered by the stockholders, and where in addition, as a part of the necessary business of teaching, an infirmary is conducted for the purpose of making the teaching effective, that infirmary producing nearly one sixth of the gross income of the corporation.

Whether then a close analysis of the facts of the cases cited by petitioner would show the decisions in them to be differentiable from those cited by respondent, and who would

upon a showing of hands upon the apparent conflict have to take the count, it would serve no useful purpose to here attempt to resolve, for we think that not only does the evidence fully sustain the finding of the board denying petitioner a personal service classification, but that there is no evidence upon which any other finding could have been legitimately rested, and this not only upon the grounds taken by the board, but upon the further ground that it admits of no contrary opinion that the capital employed by petitioner in the conduct of its business was a material income producing factor, both as to the monetary returns which came directly from the operation of the dental infirmary, and as to the tuition fees themselves. As to the tuition fees, it is perfectly plain that they were earned and produced by the use of a plant and equipment without which, no matter how eloquent the teaching of the stockholding professors might have been, no matter how magnetic the influence and drawing capacity of the stockholders, no single student could have been drawn to the school, or if drawn, kept, and instructed there.

Viewed in the large, this seems to be a case in which the presence of one of the elements of the classification, the personal service character of the work performed by the corporation, has been permitted to bulk so large as almost to close the eyes of the petitioner to the absence of all of the other elements, so that its real insistence in the end is to have construction supply the missing facts, or in the language of the street, to have the tail wag the dog.

The petition for review is denied, the judgment of the board is affirmed.