## LONG v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5684.

Circuit Court of Appeals, Sixth Circuit.

June 10, 1931.

Elwood Hamilton, of Louisville, Ky. (Woodward, Hamilton & Hobson, of Louisville, Ky., on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Allin H. Pierce, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This case involves income and profit taxes of the Star Warehouse Company, a dissolved corporation, which were asserted against the petitioner, a former stockholder and a distributee of corporate assets. The questions presented on the record are: (1) Whether section 280 of the Revenue Act of 1926 (26 USCA § 1069), under which the liability was asserted, is constitutional; and (2) whether for the taxable period, November 7, 1919, to October 30, 1920, the corporation was entitled to classification as a personal service corporation within the meaning of section 200 of the Revenue Act of 1918 (40 Stat. 1058). The first of these questions has been settled adversely to petitioner's contentions by the decision of the Supreme Court in Phillips v. Commissioner, 51 S. Ct. 608, 75 L. Ed. ——; the other requires a consideration of the proofs.

The Star Warehouse Company was incorporated in November, 1919, with a capital stock of $60,000, divided into 600 shares of the par value of $100 each. This entire capital was paid in and was used to purchase and equip a warehouse in Shelby county, Ky. The business of the company was selling tobacco for the raisers thereof on a commission basis. The stockholders were farmers and merchants residing in Shelby and adjoining counties. The selling season began in December and concluded about the middle of March. Sales were conducted in season as often as they were justified by the quantity of tobacco on the warehouse floors, usually twice a week. After the tobacco was brought to the warehouse and unloaded by the owner, it was sorted, separated into grades, and sold at auction by the company.

In order to do this, the company was required to employ a large force of men, including expert graders and auctioneers. Buyers were required to make settlement and remove their tobacco by the end of the day, but, upon completion of a sale, the company, without waiting for the buyer to pay, issued its check to the seller for the sales price, deducting therefrom its commission of 80 cents per hundred pounds. This practice of paying the seller before the buyer paid, with pay rolls and other expenses, required considerable capital and necessitated the borrowing by the company of $30,000 from banks during the period here involved. Sales for that period were approximately $1,500,000, and commissions which the company earned amounted to $30,378.54. The fair rental value of the warehouse was $8,000 a year.

 From the foregoing facts the Board of Tax Appeals concluded that capital was a material income-producing factor in the business of the company.[1] We do not deem it necessary to determine whether it was or was not, but pass the question and examine the case from the standpoint of the activities of the stockholders with respect to income. On this latter question other relevant facts are: There were nineteen original stockholders. Of this number eight held 480 shares of stock, each holding about 60 shares. Four of the eight were officers of the company; none of them devoted his whole time to its business. Petitioner was secretary and treasurer in charge of the books with an assistant. His principal business, however, was farming. Other stockholders having a smaller number of shares of the stock were farmers or farmers and merchants combined. All the stockholders solicited business for the company from their neighbors. What time they spent in doing so does not appear, but it is admitted that even during the tobacco seasons each of them carried on his regular business. It further appears that the company employed from ten to twenty warehouse laborers, depending on the volume of business, an office force consisting of three calculators, a bookkeeper, and the petitioner; that the tobacco was graded by expert grad-

[1] In support of this ruling, the Commissioner cites, among other cases, Met. Business College v. Blair (C. C. A.) 24 F.(2d) 176; Prey Bros. Live Stock Commission Co. v. Commissioner (C. C. A.) 36 F.(2d) 326; Medaris Co. v. Commissioner, 38 F.(2d) 812 (6 C. C. A.); and Franciscus Realty Co. v. Commissioner (C. C. A.) 39 F.(2d) 583. In opposing it, petitioner relies, among other authorities, upon Strayer's Business College v. Commissioner (C. C. A.) 35 F.(2d) 426.

ers, twenty-five in number, who were employed by the company; and that the auctioneers were also employed by the company.

The term "personal service corporation" means, among other things, according to the statute, a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of its affairs. It is, of course, not necessary that the principal owners devote their entire time to the business of the company, but the income must nevertheless "be ascribed primarily" to their activities. In insisting that this test is met by the proofs in the present case, the petitioner asserts that the only services which the company rendered its patrons, besides those rendered by the stockholders, were such as are ordinarily rendered by laborers and nonexpert clerical employees. No evidence was offered to support this contention and we cannot accept it as established. Nor can we agree that the skill of the graders was not a material factor in producing income, for naturally the farmer who had tobacco to sell would select the warehouse where it could be sold at the highest prices, and quite as naturally, too, a buyer who knew that the tobacco had been carefully inspected and graded would bid without making allowance for errors or mistakes as he would not do if the graders were not competent. It is probably true that to begin with sellers brought their tobacco to the warehouse through the solicitation of stockholders, but it is unreasonable to suppose that they would have continued to do so unless the grading and selling were satisfactory.

Counsel for petitioners rely upon Shipley School v. McCaughn (C. C. A.) 34 F.(2d) 281, and New Orleans Shipwright Co., Ltd., v. Commissioner (C. C. A.) 27 F.(2d) 214. We think these cases inapplicable. In the first the two principals owned the entire capital stock and gave their entire time to the school, and in the other the business was procured by virtue of the relationship of the owners to the ship lines, the employees being clerks or manual laborers requiring no expert skill. To be "regularly engaged in the active conduct of its [the company's] affairs" means something more, it seems to us, than merely asking one's neighbors, as occasion arises or as one's regular business permits, to patronize the company, leaving it to others to perform the services upon which the success of the business must ultimately depend. Skillful grading and selling were the

most important work done in connection with the warehouse company's business, and in our opinion the services of the graders and auctioneers, expert in character, were a material factor in obtaining business for the company and producing its income. In this particular the case is similar to the Blair Case, where it was held that the teachers employed by the college were such a necessary factor in the institution as to preclude the ascription of the income primarily to the activities of the owners. See, also, Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410; Id. (6 C. C. A.) 15 F.(2d) 1013; Prey Bros. Live Stock Commission Co. v. Commissioner, supra.

The order is affirmed.