## HINES et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4486.

Circuit Court of Appeals, Seventh Circuit.

April 18, 1932.

30

William S. Bennet, of Chicago, Ill., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key· and F. Edward Mitchell, Sp. Assts. to Atty. Gen., C. M. ʼCharest, Gen. Counsel, Bureau of Internal Revenue, and William Cutler Thompson, both of Washington, D. C. (Stanley B. Pierson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge (after stating the facts as above).

The sole issue herein involved is the deductibility from income of Hines of the amount paid by him as a result of his guaranty to protect Shank & Co. from loss incurred by them in the erection of the Edward Hines Jr. Hospital.

Petitioners contend, however, that Hines' loss was initiated when he bought the mortgage securities in December, 1917, and was not caused by his indemnifying contract with Shank & Co. in March, 1920. With this contention we cannot agree. The purchase of the securities may have indirectly and eventually led· to the execution of the guaranty

contract, but it is certain that said purchase of securities in no way obligated Hines to execute the guaranty contract. There is no evidence of record that Hines sustained any loss in the entire transaction over and above the sum of $767,341.53, which he paid under his guaranty contract in the respective years of 1920, 1921, and 1922. This represented the difference between the cost of the hospital and the contract price received from the government, plus Hines' contribution of $1,000,000. We think there is no causal connection between Hines' purchase of the bonds and his loss under his indemnifying contract.

It cannot be denied that Hines sustained losses in 1921 and 1922 in the manner and amounts as hereinbefore set forth. Whether or not such losses are deductible from his income for those years depends upon the statutes set forth in the margin.[1]

The Board held that Hines' loss in 1921 was the result of an isolated transaction and was not a net loss resulting from the operation of any trade or business regularly carried on by Hines within the meaning of section 204 (a), supra. It also held that the Commissioner erred in allowing a deduction of $17,347.15 in the same transaction for the year 1922, as representing a loss incurred in trade or business, or incurred in a transaction entered into for profit though not connected with the trade or business within the meaning of section 214 (a), (4), and (5), supra.

We think both rulings of the Board are correct. It is quite obvious from the record

that the activities which resulted in the losses to Hines were no part of the operation of any trade or business regularly carried on by him; but they constituted a distinct and isolated transaction, wholly separate from his trade or business, which was that of president of the lumber company. The lumber company had no interest in either the Speedway or the hospital after it sold the Speedway securities to him in December, 1917.

It is also apparent from Hines' testimony that in carrying out the projects of relieving the lumber company, and in guaranteeing the erection of the hospital, he had no thought of making a financial profit. The gist of his testimony is that in the purchase of the securities he was trying to protect his good name with the lumber company, which he very commendably thought was in issue by reason of an unwise deal of the secretary of that company, who was his brother-in-law, and on that account he said that he felt morally obligated to protect the lumber company by purchasing the bonds. If at that time he really intended, as he testified, to profit by the purchase of the securities, that fact would have quite a tendency to relieve the pressure of the moral obligation which he says was then impelling him. Later he guaranteed the construction of the hospital in a certain manner and at a certain price, and his purpose was to do that thing regardless of what personal obligation it might cast upon him, for he testified that he did not expect to be reimbursed therefor.

Similar questions have frequently been before the courts, and necessarily the determination of each case has depended upon the particular facts of the case then before the court. Under the particular facts of this case we are convinced that Hines' losses were not deductible under the statutes cited. Rogers v. United States (Ct. Cl.) 41 F.(2d) 865; Pabst v. Lucas, 59 App. D. C. 154, 36 F.(2d) 614; Goldberg v. Commissioner, 59 App. D. C. 147, 36 F.(2d) 551; G. Angelo & Co. v. Commissioner (C. C. A.) 36 F.(2d) 193; Bedell v. Commissioner (C. C. A.) 30 F.(2d) 622; Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; and Washburn v. Commissioner (C. C. A.) 51 F.(2d) 949.

Petitioners rely on Washburn v. Commissioner, supra, to support their contention, but the facts in that case relative to the trade or business regularly carried on by the taxpayer were very much different from those

---

[1] Revenue Act of 1921, c. 136, 42 Stat. 227, 231, 239:
"Sec. 204. (a) That as used in this section the term 'net loss' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); * * *
"(b) If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."
"Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *
"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;
"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit though not connected with the trade or business;
* * * "

in the instant case, and the court, we think, properly held that Washburn's loss was occasioned by the operation of his regular trade or business, and hence it was deductible. The court in that opinion said: "Obviously in every case a business to be regularly carried on must be characterized by a continuing activity in some field of business endeavor. The loss contemplated by the statute is an operating loss, and the party claiming it must be the operator of the trade or business in which the loss occurs."

The difference between that case and the one at bar is one of fact and not of law, and the same may be said as to the other cases cited by petitioners.

█ Petitioners also contend that there was error in the court's ruling because respondent introduced no evidence after amending his answer, and the burden was upon respondent to sustain the added facts. There is no merit in this contention. The evidence to sustain the amendment was already in the record, and the amendment merely caused the answer to conform to the facts proven.

The decree of the Board is affirmed.